IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
WESTERN DIVISION

IN RE:

A.J. POSTEN                                                          BK 04-73840-CMS-13

    DEBTOR.

## MEMORANDUM OF DECISION

This matter was originally set for hearings on confirmation and on First National Bank of Jasper's (FNB's) motion for relief from the automatic stay to set off deposits made to A.J. Posten's checking account. The court continued the debtor's confirmation hearing, but proceeded to try the bank's motion. The court announced from the bench that the bank would be **GRANTED** relief from stay as to the debtor's petition date balance, but **DENIED** as to postpetition deposits.

## FINDING OF FACTS

The court has deduced the following timetable from the Posten Chapter 13 case file and from the facts placed in the record at hearing:

Debtor A.J. Posten, and his wife Sandra Posten, on October 17, 1996 executed a "DEPOSIT AGREEMENT" with creditor First National Bank of Jasper to open checking account 12011754. (FNB's Exhibit 2) On November 10, 2004, A.J. Posten executed a two-year note to FNB borrowing $2,100.00 in loan number 33793774. (FNB's Exhibit 1, the bank's Proof of Claim No. 4 and attachments) The note states Posten's first $101.14 payment was due on December 6, 2004. The note provides a 10-day grace period following a 6th-day-of-the-month due date before late fees would be applied. In the case of the first installment, a late fee would be applied beginning Friday December

1

17, 2004. The itemization of the $2,100.00 loan shows Posten actually received $2,000.00 after the bank deducted $100.00 in prepaid finance charges. Posten granted FNB a security interest in "my deposit accounts and other rights to the payment of money from you" under terms of the note.

Between the November loan transaction and the December 10, 2004 filing of his bankruptcy case, Posten testified that he met with Rod Cameron Shirley, his bankruptcy attorney. (Posten was on direct examination by Shirley at the January 19, 2005 hearing at Jasper, Alabama.) In answer to Shirley's questions, the debtor confirmed that the attorney had told him that his deposit account was subject to FNB's setoff rights. Shirley advised the debtor to withdraw funds he would need for "normal and necessary" monthly living expenses as stated in his bankruptcy petition. (BK Doc. 1) Posten said he had withdrawn approximately $1,500.00 from the account before December 10, 2004 when the bankruptcy petition was filed. (BK Doc. 1). The bank and the debtor stipulated in open court that there was only $66.12 in account 12011754 on the petition date.

However, additional funds apparently were deposited in the account postpetition. The bank's Exhibit 1 states that the bank's claim against the debtor was "incurred" November 10, 2004, but does not state when the debtor's claim against the bank (including postpetition deposits) was created. The bank's right to retain postpetition funds is the issue in this relief from stay/setoff motion. Although the bank offered no deposit records in evidence or as an attachment to Claim 4, the **MOTION FOR RELIEF FROM STAY** (BK Doc. 12) stated the account balance had increased to $2,320.00 on December 22, 2004. The bank applied an "administrative freeze" on the deposit account on December 24, 2004, before filing this relief-from-stay motion. Claim 4, dated December 29, 2004, stated Posten owed a total of $1,983.12 on note 33793774. The bank stated it was secured to the extent of the $599.14 in the bank account pursuant to 11 U.S.C. §§ 506(a) and 553(a). It claimed

2

Case 04-73840-CMS13    Doc 22    Filed 02/16/05    Entered 02/16/05 14:26:13    Desc Main
Document      Page 2 of 9

the remaining $1,383.98 payoff deficit as an unsecured debt. The claim listed "$0.00" as the "Amount of arrearage and other charges <u>at time case filed</u>, including secured claim, if any." (emphasis added)

Posten testified at hearing that his total $2,200.00 in monthly Social Security disability payments apparently went into the checking account on December 22, 2004. (The debtor said he received approximately $1,514.00 in his own disability check and another $979.00 per month for a daughter.) He testified that when he called FNB to confirm the deposits had been made, the bank informed him that the funds were not available to him, and that his account was $531.00 overdrawn. He testified that the bank bounced an estimated six checks. He said that he had to borrow money to make the payments these checks represented, and also owed bad check charges. FNB was still in possession of the remaining $599.14 as of the January 19, 2004 hearing.

FNB counsel David Hood argued at the hearing that, in addition to prepetition setoff rights, the bank could claim the whole balance as of the "administrative freeze" as either a formal security interest in postpetition proceeds and/or a "common law assignment" in the bank's favor. However, he offered no additional statutes or common law authority beyond that already stated in his motion (BK Doc. 12).

After the debtor's direct testimony ended, Hood stated he had no questions for Posten at that time. After Shirley closed his case for the debtor, Hood also stated he would offer no rebuttal to Posten's testimony.

Prior to the hearing, Hood had asked the court to continue confirmation of Posten's Chapter 13 reorganization plan until the February court setting to allow the bank to file an objection to confirmation.

3

At the close of the hearing, the court announced from the bench that FNB's claim was secured only to the extent of the $66.12 balance as of the December 10, 2004 petition date under its Section 553 setoff right. The court also stated that the Bankruptcy Code prevented the bank from improving its collateral interest following the petition date, and denied relief from stay as to postpetition deposits.

The court continued confirmation of the debtor's plan until February 16, 2005. The following is a memorialization of those bench rulings and the court's rationale.

## CONCLUSIONS OF LAW

This court has jurisdiction of A.J. Posten's Chapter 13 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of this contested matter, a core bankruptcy proceeding pursuant to 11 U.S.C. §§ 362 and 553, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to this court by the General Order of Reference of the United States District Courts for the Northern District of Alabama, signed July 16, 1984, as amended July 17, 1984.

The issue is whether, and to what extent, this Bankruptcy Court should recognize FNB's setoff rights under 11 U.S.C. § 553. That will determine the extent the bank is granted relief from stay to retain deposits. There is no "administrative freeze"/stay violation issue in this case at all.

Such temporary administrative freezes are clearly allowed under the authority of Citizen's Bank of Maryland v. Strumpf, 516 U.S. 16 (1995), and that holding appears to have caused some confusion. Strumpf dealt only with whether a creditor could temporarily hold money without violating the automatic stay of Section 362(a). It did not reach the merits of whether the creditor was actually entitled to permanent setoff, and consequently, was due actual relief from stay. That is the dispute before the court in this case. Decision of this ultimate issue is a core bankruptcy proceeding

4

arising under federal law.

The 1995 Strumpf case resolved a split among the circuits about whether such freezes themselves were stay violations which might entitle the debtor to damages and attorneys fees. The Eleventh Circuit Court had held in 1992 that a creditor's action to "freeze" accounts and bounce the checks of a debtor who was not in default could be such a violation. See B.F. Goodrich Employees Federal Credit Union v. Patterson (In re Patterson), 967 F.2d 505, 510-13 (11th Cir. 1992). To that extent, Strumpf invalidated a rule previously applied in this and some other circuits.

11 U.S.C. § 553(a) provides the following:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, ... (emphasis added)[1]

Section 553(a) guarantees a creditor that it will not lose any setoff rights it held under nonbankruptcy law on the petition date. The plain language of the federal statute requires that all transactions involving a valid creditor/debtor setoff be prepetition and mutual. Mutuality of obligation is defined by the applicable non-bankruptcy law, in this case, Alabama state law.

The Supreme Court ruled in Strumpf that creditors may deny access to funds only so long as it takes for the bankruptcy court to decide a relief from stay motion. Thereafter, the creditor may retain the funds only if the court grants relief. If the court denies relief, the creditor may not keep the funds.

Patterson, and bankruptcy court precedents on setoff rights under Section 553, remain good

---

[1] The exceptions to setoff listed in Subsections 553(a)(1), (2), and (3) are not available to Posten under these facts.

5

law post-Strumpf. See Carlton Company v. Jenkins (In re Jenkins), 2004 WL 768574 (Bankr. S.D. Ga. 2004) (unpublished, unreported decision listed only on WestLaw); Levine v. Kenny (In re Flooring America, Inc.), 302 B.R. 403 (Bankr. N.D. Ga. 2003); In re Black, 280 B.R. 680 (Bankr. N.D. Ala. 2001); Okwukwu v. Internal Revenue Service (In re Okwukwu), 210 B.R.194 (Bankr. N.D. Ala. 1997); United States v. Jones, 230 B.R. 875 (M.D. Ala. 1999).

The Eleventh Circuit defined the mutuality requirement of the Alabama law of setoff in the following way:

[W]hether mutuality of obligation was present is an issue of Alabama law because Section 553 requires, but does not define, mutuality. See Frederick v. America's First Credit Union (In re Frederick), 58 B.R. 56 (Bankr. N.D. Ala. 1986). Mutuality is present under Alabama law when cross demands are "due from one party to the other in the same right." King v. Porter, 230 Ala. 112, 160 So. 101, 104 (1935); accord First National Bank of Abbeville v. Capps, 208 Ala. 207, 94 So. 109,110 (1922). Citing this early precedent, the Supreme Court of Alabama recently summarized a bank's argument for setoff as follows:

> A bank customer's deposit in a banking account becomes a debt from the bank to the customer. When the bank also lends money to the depositor, mutual debts exist, and the bank may, when the loan matures, apply the money it owes the depositor towards the depositor's debt to the bank.

Rainsville Bank v. Willingham, 485 So. 2d 319 (Ala. 1986) (emphasis added). Mutuality of obligation in Alabama, therefore, requires that the cross demands are between parties of like capacity and that the demands are mature at the time of setoff. (emphasis added)

Patterson, 967 F.2d at 510-11.

There are two steps to the consideration. First, the Bankruptcy Court must determine if a claimant has a setoff right cognizable under state law (or other non-bankruptcy law). If the court determines that such a right is available under non-bankruptcy law, then it must make the discretionary federal decision of whether, and in what amount, the setoff should be applied in the bankruptcy case. The party seeking the setoff under Section 553 has the burden of proof. See Barnett Bank of Tampa v. Tower Environmental, Inc. (In re Tower Environmental, Inc.), 217 B.R. 933, 937

6

(Bankr. M.D. Fla. 1997).

Under longstanding law, the elements required by a bankruptcy court to recognize a setoff under Section 553(a) are the following:

> While the Bankruptcy Code does not create a federal right of setoff, if a party possesses a right of setoff outside bankruptcy, § 553(a) preserves that right when certain conditions are met. <u>Citizens Bank of Md. v, Strumpf</u>, 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995); <u>Alexander v. Internal Revenue Serv.</u> (<u>In re Alexander</u>), 225 B.R. 145, 147 (Bankr. W.D. Ky. 1998). The additional conditions requisite to making a setoff under § 553(a) are: (1) the absence of the exceptions listed in §553(a); (2) a debt owed by the creditor to the debtor <u>which arose prior to the commencement of the bankruptcy case</u>; (3) a claim of the creditor against the debtor <u>which arose prior to the commencement of the bankruptcy case</u>; and (4) the debt and claim must be <u>mutual or reciprocal obligations</u>. <u>Posey v. U.S. Dept. of Treasury-Internal Revenue Service</u>, 156 B.R. 910, 914 (W.D. N.Y. 1993); <u>Runnels v. Internal Revenue Serv.</u>(<u>In re Runnels</u>), 134 B.R. 562, 564 (Bankr. E.D. Tex. 1991). (emphasis added)

<u>United States of America v. Jones</u> (<u>In re Jones</u>), 230 B.R. 875, 878 (M.D. Ala. 1999). <u>See</u> also <u>In re Black</u>, 280 B.R. 680, 686 (Bankr. N.D. Ala. 2001).

It is not completely clear to the court whether the "maturity" required to apply the Alabama state law of setoff (and thus, Section 553) existed on the December 10, 2004 petition date. A close reading of the bank's own evidence appears to show that FNB's claim against the debtor for the first $101.14 payment was "due" December 6, 2004 (prepetition), and subject to late charges as of December 17, 2004 (postpetition). Exhibit 1 states that Posten's arrearage on the petition date was "$0.00."

However, the debtor did not argue a lack of maturity on his obligation to the bank. The bank's Exhibit 1 evidence on this issue was not augmented by explanatory testimony either. Both parties stipulated in open court that the bank's debt to the debtor on his petition date was the $66.12 remnant of prepetition deposits.

If FNB's claim is deemed mature and enforceable under state law, Section 553 setoff rights would, at most, apply only to the $66.12 that was the December 10, 2004 balance, and not to the

7

remains of the postpetition deposits as of the December 24, 2004 freeze. See Agricultural Federal Credit Union v. Harris (In re Harris), 260 B.R. 753 (Bankr. D. Md. 2001), In re Czyzk, 297 B.R. 406 (Bankr. D. N.J. 2003)(Bank cannot offset postpetition deposits of debtor against prepetition loan obligations.)

Debtor's loan agreement with FNB granted FNB a security interest in "my deposit accounts and other rights to the payment of money from you." (FNB Exhibit 1) 11 U.S.C. Section 552(a) and (b)(1) provide:

> (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
>
> (b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Postpetition deposits into debtor's checking account are not "proceeds, product, offspring or profits" of prepetition deposits. See Harris, 260 B.R. at 758.

Consequently, the court finds that FNB must be denied relief from the stay to exercise its setoff rights as to its postpetition obligations to debtor (postpetition deposits) against debtor's prepetition obligations to FNB (loan #33793774).

## CONCLUSION

Creditor First National Bank of Jasper's **MOTION FOR RELIEF FROM STAY** (BK Doc. 12) is to be **GRANTED** to the extent of the $66.12 in prepetition deposits the bank owed the debtor

8

as of December 10, 2004; but must be **DENIED** as to any postpetition deposits or other rights to payment the debtor may have against the bank.

The court will enter an order, consistent with this memorandum, pursuant to Fed. R. Bankr. P. 7052.

**DONE and ORDERED** this February 16, 2005.

/s/ C. Michael Stilson

C. Michael Stilson

United States Bankruptcy Judge

9